**Dobransky v. CSX Transportation Inc.**

C.P. of Lawrence County, no. 58 of 1989, C.A.

*David T. Mojock,* for plaintiffs.

*Robert D. Leidigh,* for defendant CSX Trans. Inc.
*Thomas W. Leslie,* for defendant Taylor Twp.

PRATT, *J.,* April 3, 1996—After a jury trial, which was completed on March 28, 1995, all parties timely filed motions for post-trial relief in accordance with Pa.R.C.P. 227.1. Due to a delay in the court stenographer transcribing the notes of testimony, oral argument of the motions was not conducted until December 13, 1995 at which time defendant Taylor Township, upon its own motion, was granted leave to withdraw its motion for post-trial relief. The matters remaining before this court, therefore, are defendant CSX Transportation Inc.'s motion for post-trial relief in the nature of a motion for judgment notwithstanding the verdict, motion for new trial, and motion to mold the verdict. Also, before the court is the motion for judgment notwithstanding the verdict and motion for new trial of the plaintiffs, Cecelia M. Dobransky et al. In addition, the Dobranskys have presented the court with a motion for delay damages, which shall be disposed of by a separate order.

## I. CSX's MOTION FOR POST-TRIAL RELIEF

### A. *Motion for Judgment Notwithstanding the Verdict*

A motion for judgment notwithstanding the verdict may be granted when there was no issue of fact which should have been submitted to the jury. *Myers v. Plummer,* 21 D.&C. 12 (1934). Thus, the only type of error which constitutes grounds for judgment notwithstanding the verdict is the failure to grant a directed verdict that should have been granted. *Lessy v. Great Atlantic & Pacific Tea Co.,* 121 Pa. Super. 440, 183 A. 657 (1936).

In this case, CSX maintains that the court erred in denying its request for a directed verdict and, thus, moves the court for the entry of judgment notwithstanding the verdict.

Essentially, CSX maintains that there was no issue of fact to submit to the jury with respect to the railroad's duty of care to the plaintiffs' decedent, as the railroad's duty to safely maintain the railroad crossing that was the site of the accident in this case was preempted by state law. CSX bases its position on 66 Pa.C.S. §2702, which places the power to determine the adequacy of crossing safety protection solely in the hands of the Pennsylvania Public Utility Commission. CSX also maintains that it had no duty to petition the PUC regarding the need for improved safety devices at the accident site and that its failure to do so is legally insufficient to establish CSX's negligence.

In its argument for the entry of judgment notwithstanding the verdict, CSX relies principally upon *National Freight Inc. v. SEPTA,* 698 F. Supp. 74 (E.D. Pa. 1988), *aff'd,* 872 F.2d 413 (1989). *National Freight* held that 66 Pa.C.S. §2702 precludes a cause of action against a railroad based on the improper design or installation of a warning device at a railroad crossing. However, there is nothing in *National Freight* that precludes a railroad's duty to exercise ordinary care at a crossing by properly maintaining a warning device or otherwise adopting a reasonably safe and effective method of warning motorists of the approach of a train; in fact, *National Freight* acknowledged that a railroad may be required to exercise more than ordinary care at an unguarded crossing or at a crossing with a severely restricted view, as was the case in the instant action, under our Supreme Court's holding in *Fallon v. Penn Central Transportation Co.,* 444 Pa. 148, 279 A.2d

164 (1971). More recently, in *Marinelli v. Montour Railroad Co.,* 278 Pa. Super. 403, 420 A.2d 603 (1980), the Superior Court held that a railroad had a duty to motorists to maintain a 14-foot clearance under a railroad bridge that crossed over a public highway, notwithstanding the provisions of 66 Pa.C.S. §2702. Therefore, CSX's motion for judgment notwithstanding the verdict shall be denied.

## B. *Motion for New Trial*

CSX's motion for post-trial relief alleges a number of errors by the trial court as a basis for requesting a new trial, as discussed below.

## Whether the Court Erred in Admitting Dobranskys' Exhibits 8 and 10

The principal basis advanced by CSX in support of its contention that the court erred in admitting Dobranskys' exhibits 8 and 10 is that these exhibits are barred by 23 U.S.C.S. §409. Section 409 renders inadmissible reports, surveys, schedules, lists or data compiled for the purpose of identifying, planning, or evaluating the safety enhancement of railway-highway crossings. CSX would apply the section 409 bar to two letters from the Taylor Township Board of Supervisors to the Baltimore and Ohio Railroad.

This court does not believe that the letters are the type of data the statutory provision anticipates. The purpose of section 409 is "to facilitate candor in administrative evaluations of highway safety hazards" by preventing a court from receiving records of such evaluations into evidence. *Duncan v. Union Pacific Railroad,* 790 F.2d 595 (Utah Ct.App. 1990). We do not see how suppression of the letters in the instant case, which

were introduced for the purpose of showing notice to CSX, advances the stated purpose of section 409. And, while the statute bars "administrative evaluations of highway safety hazards," it does not bar, in the option of at least two courts, raw data that may be used by a railroad in compiling reports or evaluating a crossing hazard. See *Wiedeman v. Dixie Electric Membership Corporation*, 627 So.2d 170 (La. 1993), and *Southern Pacific Transportation v. Yarnell*, 890 P.2d 1297 (Ariz. 1995).

Therefore, we believe that section 409 does not apply to the township letters in this case.

Whether the Court Erred in Its Instructions to the Jury on the Stop, Look and Listen Rule

The court charged the jury that they could find an exception to the stop, look, and listen rule if they found that plaintiffs' decedent was not afforded an unobstructed view of the train approaching the River Road crossing. In so charging the jury, the court relied on a line of cases in which a plaintiff or decedent had been excused from complying with the rule. See *Fallon v. Penn Central Transportation Co., supra; Johnson v. Pennsylvania Railroad Co.,* 399 Pa. 436, 160 A.2d 694 (1960); and *Buchecker v. Reading Co.,* 271 Pa. Super. 35, 412 A.2d 147 (1979). Although CSX questions the continued viability of these cases, which predate passage of the Comparative Negligence Act, the court notes that none of these cases have been explicitly overruled and they remain binding precedent for the court to follow. Hence, this assignment of error is rejected.

## Whether the Court Erred in Its Jury Instructions on the Sudden Emergency Doctrine and the Assured Clear Distance Rule

The court instructed the jury that the sudden emergency doctrine was an exception to the assured clear distance rule. Trial transcript March 28, 1995, at 128. CSX argues that the evidence in this case was insufficient to establish that the decedent faced any sudden emergency, other than one created by his own conduct.

This court has been chastised by our Supreme Court in the past for its refusal to provide a charge on the sudden emergency doctrine. See *Lockhardt v. List,* 542 Pa. 141, 665 A.2d 1176 (1995). The court thus finds it ironic to be chastised by counsel for CSX for providing the charge. Under the rule enunciated in *List,* the court believes that the sudden emergency charge was appropriate, as the jury could conclude that plaintiffs' decedent was not driving carelessly or recklessly on the basis of the evidence presented.

## Whether the Court Erred in Its Jury Instruction Concerning CSX's Duty To Control Weeds

The court instructed the jury on the railroad's statutory duty under Pennsylvania law to control brush and weeds within 200 feet of the railroad crossing. T.T., March 28, 1995, at 117-18. CSX cites *Sgrignoli v. Bill,* 44 Cumb. 43 (1994) in support of its contention that the court erred by so instructing the jury. *Sgrignoli* held that Pennsylvania law is preempted by federal law under the United States Supreme Court's holding in *CSX Transportation v. Easterwood,* 113 S.Ct. 1732, 123 L.Ed.2d 1987 (1993). *Sgrignoli,* of course, is not binding precedent.

More importantly, the Cumberland County Court decision, in this court's opinion, misreads *Easterwood,* which held that suits cannot be brought against a railroad for inadequate warning signs if federal funds were used to construct the signs. However, there is nothing in *Easterwood* which indicates that a railroad must wait for approval from the United States Secretary of Transportation before it can take steps to eliminate brush and weeds in the vicinity of a crossing. In fact, *Easterwood* states that a railroad remains responsible for specific individual hazards or uniquely dangerous local conditions of which the railroad has knowledge. This court believes that an overgrowth of brush and weeds, such as might restrict a motorist's or a train operator's view of a crossing, is a specific individual hazard or a uniquely dangerous local condition over which a railroad remains responsible. Thus, the railroad's statutory duty under Pennsylvania law is not preempted by the Federal Railroad Safety Act, and the court's charge to the jury in this case was not error.

Whether the Court Erred in Instructing the Jury
That Damages Could Be Awarded for Pain and
Suffering From the Moment of Plaintiffs'
Decedent's Awareness of the Impending Collision

The court believes that its charge is consonant with Standard Jury Instruction 6.10 and is supported by case law. See *PennDOT v. Phillips,* 87 Pa. Commw. 504, 488 A.2d 77 (1985). In *Phillips,* the Commonwealth Court held that it was proper to award damages for pain and suffering to the estate of a motorist who was killed when an approaching car lost control on an ice patch and struck the decedent's vehicle. The court concluded that the motorist had experienced fright and terror from the moment the opposing car lost control

on the ice patch, which extended six to eight feet across the road, to the moment of his death, shortly after impact.

## Whether the Court Erred in Instructing the Jury That Damages Could Be Awarded for Conscious Pain and Suffering When the Evidence Was Insufficient To Support the Inference That Plaintiffs' Decedent Suffered Conscious Pain

The court believes it was clear from the evidence in this case, which included the testimony of a trained nurse's aide who arrived at the scene within minutes of the collision, that death was not instantaneous, that plaintiffs' decedent was conscious, and that he suffered pain. See *Mecca v. Lukasik,* 366 Pa. Super. 149, 530 A.2d 1334 (1987) (holding that an instruction permitting the jury to award damages for pain and suffering was warranted where a decedent motorist died minutes after the vehicle in which she was traveling veered from side to side on a rural road and plunged through the guardrail into the chasm below. Note that in *Mecca* the instruction was held to be warranted despite the testimony of a physician who maintained that the decedent probably lost consciousness from the moment the vehicle left the roadway).

## Whether the Court Erred in Instructing the Jury That Decedent's Earnings Should Be Reduced To Reflect Personal Maintenance Expenses Only Until the End of Decedent's Working Lifetime

As CSX observes in its brief, the court's charge was in keeping with long-established case law. Notwithstanding CSX's contention that this long-established law is incorrect, the court is bound to follow existing legal precedent.

### Whether the Court Erred in Its Instruction to the Jury on Causation

CSX maintains that the court instructed the jury that CSX had a burden to prove that defendant Taylor Township's conduct was negligent and a legal cause in bringing about the injuries. This is a mischaracterization of the court's charge, as the record clearly shows. See T.T., March 28, 1995, at 117.

### Whether the Court Erred in Instructing the Jury on CSX's Duty of Care and in Its Instructions With Regard to CSX's Duty To Petition the PUC

These allegations of error revisit the issues discussed above in connection with CSX's motion for judgment notwithstanding the verdict. The court reaffirms its determination that 66 Pa.C.S. §2702 does not preclude CSX's duty to plaintiffs' decedent in this case.

### Whether the Court Erred in Refusing To Charge the Jury on the Holding in the *National Freight v. SEPTA* Case

This allegation of error also revisits issues discussed above in connection with CSX's motion for judgment not withstanding the verdict. For the reasons noted above, *National Freight* is inapplicable to this case.

### Whether the Court Erred in Refusing To Charge the Jury on Assumption of the Risk

As the Dobranskys rightly observe in their opposing brief, the issue is controlled by *Struble v. Valley Forge Military Academy,* 445 Pa. Super. 224, 665 A.2d 4 (1995), which held that a jury must be charged only on comparative negligence once the trial court decides

that assumption of the risk is not a basis for entering a compulsory nonsuit. The court is unconvinced that the evidence shows that plaintiffs' decedent voluntarily assumed the risk of colliding with the train.

## Whether the CSX Was Entitled to Jury Instructions That It Had No Duty To Petition the PUC, the PUC Has Exclusive Authority To Determine the Protection of Grade Crossings in Pennsylvania, if the Jury Found That the Decedent Was Driving Too Fast for Conditions They Must Find Him Negligent, or His Failure To Stop, Look and Listen Was Contributory Negligence

Again, these allegations of error revisit issues previously discussed in this opinion and rejected.

## Whether the Court Erred in Permitting the Jury To Find CSX Liable for Failure To Petition the PUC To Install Flashing Lights and/or Gates, or for the Design of the Subject Grade Crossing, Given the Comprehensive Federal Scheme Dealing With the Prioritization of Railroad Grade Crossings Concerning Such Projects and the Absence of Any Evidence That CSX Interfered With or Failed To Follow Any Directive From the Federal Government, the PUC, or the Pennsylvania Department of Transportation Concerning Protection at the River Road Grade Crossing

This allegation of error asks the court to revisit a question decided in this case at the summary judgment stage. The allegation also implicitly invites the court to reverse binding legal precedent—the United States

Supreme Court's holding in *CSX Transportation v. Easterwood, supra.* This the court declines to do, as counsel for the defendant should certainly have anticipated.

## Whether the Court Erred in Denying CSX's Motion for Mistrial Based on the Jury's Exposure to Standard Jury Instructions and Other Material Left in the Jury Room

This issue was raised at trial, prompting the court to poll jurors individually to learn if, possibly, they had been tainted by exposure to prejudicial material. The court was satisfied that all jurors were unaware of the material unintentionally left in the jury room and were not contaminated by it. Therefore, this court finds that CSX was not prejudiced in any fashion by the material being in the jury room for such a short period of time.

## Whether the Court Impermissibly Allowed the Jury To Consider, As Elements of Economic Damages, Health Insurance Premiums, Decedent's Gross Earnings, Rather Than His Net Earnings, Etc.

This assignment of error is without merit, as Pennsylvania law permits the jury to consider the disputed items as elements of economic damages in wrongful death and survival actions. See *Kraker v. Don Swart Trucking Inc.,* 323 F. Supp. 157 (W.D. Pa. 1971); *Rivera v. Philadelphia Theological Seminary,* 326 Pa. Super. 509, 474 A.2d 605 (1984); *Thompson v. City of Philadelphia,* 222 Pa. Super. 417, 294 A.2d 826 (1972).

## C. *Motion To Mold the Verdict*

CSX asserts that the verdict in this case was against the weight of the evidence and that the damages awarded were excessive. The court may correct a verdict so that it may be brought into accord with the evidence. *Interstate Creamery Inc. v. Reinerth,* 212 Pa. Super. 335, 243 A.2d 451 (1968). However, if the verdict is improper as being against the weight of the evidence, it may be set aside by the court but not corrected. *Id.* Accordingly, it would be improper to mold the verdict for the reasons set forth by the defendant.

## II. PLAINTIFFS' MOTION FOR POST-TRIAL RELIEF

### A. *Motion for Judgment Notwithstanding the Verdict*

As noted above, judgment notwithstanding the verdict may be granted when there are no issues of fact to submit to a jury. The rendering of a judgment notwithstanding the verdict is considered a drastic act and should be entered only when the facts are such that no two reasonable persons could fail to agree that the verdict was improper. *Cummings v. Nazareth Borough,* 427 Pa. 14, 233 A.2d 874 (1967). Judgment notwithstanding the verdict may be entered only in a clear case, and any doubts should be resolved in favor of the verdict. *Pantuso v. Pittsburgh Motor Coach Co.,* 360 Pa. 464, 62 A.2d 56 (1948).

The Dobranskys assert that the court instructed the jury that it should find the township negligent per se, if the township installed speed signs on the highway leading to the site of the accident without conducting the required engineering and traffic studies. At trial,

the Dobranskys produced the unrebutted testimony of the two township supervisors who testified that, to the extent of their knowledge, the township had not conducted the required studies. Upon cross-examination, however, the supervisors were unable to say whether the studies might have been conducted at a time outside their knowledge. Accordingly, the court is reluctant to overturn the verdict of the jury on this basis, that is, we believe that the Dobranskys did not meet their burden of proving by a preponderance of the evidence that the studies were not done. The court further observes that there were issues of fact, as well as of the credibility of the township supervisors, for the jury to decide, and that judgment notwithstanding the verdict is improper under these circumstances and in accordance with the case law cited above.

## B. *Motion for New Trial*

The Dobranskys offer three reasons to justify granting a new trial and contend that the court erred in: (1) charging the jury that Taylor Township could not be liable for acts of omission; (2) failing to give Dobranskys' proposed jury instructions nos. 9, 11, and 35, relating to the duties of the township; and (3) declining to admit evidence of statements made and complaints received for the purpose of showing notice of dangerous conditions to the township.

The Dobranskys' first allegation of error rests on their interpretation of *McCalla v. Mura,* 538 Pa. 527, 649 A.2d 646 (1994), which was a plurality decision of our Supreme Court. This court believes that the Dobranskys unduly emphasize the opinions of two of the justices concurring in the majority opinion in concluding that a municipality may be liable when it fails to take

action on discretionary matters of highway design and construction.

With respect to proposed jury instruction no. 9, the Dobranskys misstate the holding of *Marinelli v. Montour Railroad Co., supra,* which Dobranskys cite as the basis for the proposed instruction. *Marinelli* addresses the duty of a *railroad* and does not speak to the duty imposed by law on a public authority, such as the township.

Similarly, proposed jury instruction no. 11 rests on a misinterpretation of *CSX Transportation v. Easterwood, supra,* with respect to the applicability of the manual on uniform traffic control devices.

Proposed jury instruction no. 35 is likewise without an adequate basis in law, as defendant Taylor Township was not required to paint railroad crossing markers on the road leading to the crossing in this case.

Lastly, the comments offered by the Dobranskys for the purpose of showing notice of dangerous conditions to Taylor Township were excluded by the court for lack of relevance, as they pertained to conditions over which the township had no legal duty.

For the reasons stated above, the court shall enter an order denying plaintiffs' and defendant CSX Transportation Inc.'s motions for post-trial relief and ordering defendant Taylor Township's motion for post-trial relief as withdrawn.

ORDER

Based upon the accompanying opinion, the plaintiffs' motion for post-trial relief and defendant CSX Transportation Inc.'s motion for post-trial relief are denied. Defendant Taylor Township's motion for post-trial relief is withdrawn.

Accordingly, judgment is entered for plaintiffs and against defendant CSX Transportation Inc. in accordance with the jury's verdict of March 28, 1995 as molded for delay damages and plaintiffs' comparative negligence by this court's order of April 3, 1996, in the total sum of $319,983.78.